# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JODIE FARKAS,** | : | **CIVIL ACTION NO. 1:15-CV-356** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NRA GROUP LLC, individually** | : | |
| **and d/b/a NATIONAL RECOVERY** | : | |
| **AGENCY ("NRA"), *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Jodie Farkas ("Farkas") brings this civil action pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, asserting claims for FMLA interference and retaliation.[1]  (<u>See</u> Doc. 1).  Defendants move the court for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 19).  The court will grant defendants' motion.

---

[1] Farkas was married after filing this lawsuit and now uses the name "Jodie Elizabeth Curry."  (Doc. 20, Ex. A, Curry Dep. 7:20-8:5 (Nov. 19, 2015) (herein "Farkas Dep.")).  For ease of reference, the court will refer to plaintiff as Farkas herein.

# I.   <u>Factual Background and Procedural History</u>[2]

Farkas began her employment with defendant NRA Group, LLC, ("NRA"), on March 4, 2013 at NRA's Crossgate location. (Doc. 21 ¶ 1; <u>see</u> Doc. 1 ¶ 1; Doc. 21 ¶ 47). NRA operates as an accounts receivable management company which, *inter alia*, provides debt collection service and credit bureau reporting to its third party clients. (Doc. 21 ¶ 2). NRA hired Farkas to work as a "debt collector." (<u>Id.</u> ¶ 1). Her responsibilities include "taking inbound phone calls and making outbound phone calls" to assist NRA's clients in recovering unpaid debts. (<u>Id.</u> ¶ 6).

It appears from the Rule 56 record that Farkas's performance is measured against a weekly collection quota and that she is eligible for a bonus under certain circumstances, but neither party offers any elaboration on the quota or bonus structure. (<u>See</u> Docs. 1, 21). It is clear, however, that an employee who violates federal debt collection law or company policy may become ineligible for bonuses. (Doc. 21 ¶ 48). Farkas was disciplined three times during the early period of her employment: for failure to meet weekly performance goals in June 2013, failure to

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. <u>See id.</u> A nonmovant's failure to comply with Rule 56.1 permits a court to deem the movant's statement of material facts to be undisputed. <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Kuhn v. Capitol Pavilion</u>, No. 1:11-CV-2017, 2012 WL 5197551, at *9 (M.D. Pa. Oct. 19, 2012) (Rambo, J.); <u>Thomas v. United States</u>, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008) (Conner, J.). Farkas did not file a response to defendants' statement of material facts as required by Local Rule 56.1. Nor does Farkas dispute defendants' factual account in her opposition brief. (<u>See</u> Doc. 24). As a consequence, the court deems defendants' statement of facts to be undisputed.

work scheduled hours in July 2013, and violation of the Fair Debt Collection Practices Act ("FDCPA") in January 2014. (See Doc. 20, Ex. A, Farkas Dep. 99:17-100:21; Doc. 21 ¶ 54).

From October 2013 through May 7, 2014, Farkas was responsible for answering the "supervisor/takeover" line (the "supervisor line"). (Doc. 21 ¶ 7). In that capacity, Farkas would answer the supervisor line "when an irate consumer or individual would like to speak with a supervisor and ask directly to speak with a supervisor." (Id. ¶ 7). This designation did not authorize Farkas to hire, fire, or discipline employees, nor was she able to delegate assignments or engage in other traditional supervisory tasks. (See id. ¶ 8). Farkas received an additional $50.00 per pay period for her supervisor line responsibilities. (Id. ¶ 9).

Farkas began suffering from migraine headaches in August 2013. (Farkas Dep. 62:15-22). In October 2013, she received a doctor's diagnosis for her migraine condition. (Doc. 21 ¶ 11). Farkas approached NRA's office manager, defendant Zulaima Figueroa ("Figueroa"), on February 27, 2014 to request FMLA paperwork. (See id. ¶ 12). Thereafter, Farkas began recording any FMLA-related interactions with NRA employees in a journal. (See id. ¶¶ 13-15). Farkas completed the FMLA paperwork and returned it to defendant Alonzo Hankerson ("Hankerson"), NRA's human resources director, on March 3, 2014. (See id. ¶¶ 3, 16-17).

During their conversation on March 3, 2014, Hankerson told Farkas "that she could take off all 12 weeks of FMLA at once." (Id. ¶ 17). Farkas responded by explaining to Hankerson that her request was for intermittent FMLA leave. (See id. ¶ 18). Farkas testified that Hankerson suggested she seek out part time work since

3

she "cannot control" her condition.  (Doc. 20, Ex. A, Farkas Dep. 68:24-69:2).  Farkas stated that Hankerson seemed "confused" and that his usually soft-spoken tone was "loud," (Doc. 20, Ex. A, Farkas Dep. 67:7-68:7, 69:14-71:4), but he ultimately advised that he would "look into how FMLA works and [would] get back to [her] if it was approved."  (Doc. 21 ¶ 19).  According to Farkas, Hankerson also suggested that she simply abandon her request and "just get a doctor's note every time [she] was going to call off," noting that Farkas has a daughter whom she may need to use FMLA leave to care for in the future.  (See Doc. 20, Ex. A, Farkas Dep. 53:13-15, 142:15-19; see also id. 71:19-20).  Hankerson investigated the availability of FMLA intermittent leave after his March 3, 2014 meeting with Farkas and granted her request the same day.  (Doc. 21 ¶¶ 20-21).  Farkas testified that she was never denied intermittent leave after Hankerson approved her request.  (Id. ¶ 22).

On March 21, 2014, Farkas's direct supervisor, defendant Jessie Miles ("Miles"), warned Farkas that if she did not work forty hours that week, she would not be eligible for a bonus.  (Id. ¶ 23).  Farkas ultimately worked forty hours that week and did receive her bonus.  (Id. ¶ 24; Doc. 20, Ex. A, Farkas Dep. 73:23-74:5).  Some weeks, Farkas received a bonus despite not working forty hours.  (See Doc. 21 ¶ 25; see also Doc. 20, Ex. A, Farkas Dep. 74:6-8).  On March 25, 2014, Farkas called out of work on FMLA leave and spoke with Miles.  (See Doc. 21 ¶ 27).  According to Farkas, Miles "raised her voice loudly" and directed Farkas to call Figueroa from then on when Farkas needed to call out of work.  (Id.)  Three days later, Miles reproved Farkas for her payments being "low that week" and warned that Farkas may need retraining.  (Id. ¶ 29).  Farkas admits her payments were in fact low that

week but she was not required to return to training.  (Id. ¶ 30; see Doc. 20, Ex. A, Farkas Dep. 76:18-21).

Farkas also testified that, during an April 9, 2014 staff meeting, Miles informed "[a]pproximately 11 or 12" employees that all debt collectors, regardless of whether they "are out on FMLA or on regular work schedule[s]," must meet weekly goals.  (Doc. 20, Ex. A, Farkas Dep. 77:17-78:9; Doc. 21 ¶ 32).  According to her FMLA journal entries, Farkas met with Charlene Sarver ("Sarver"), assistant director of dialer and collections for NRA, to discuss Miles' statement.  (See Doc. 20, Ex. A, Farkas Dep. Ex. 2, at 4; Doc. 21 ¶¶ 5, 33).  Farkas further noted that Sarver, who had managerial authority over both Farkas and Miles, assured her that "none of [what Miles said] is correct."  (Doc. 20, Ex. A, Farkas Dep. Ex 2, at 4; Doc. 21 ¶ 33).

On April 16, 2014, Craig Andrus ("Andrus"), NRA's training manager, approached Farkas to discuss twelve collections letters sent by Farkas which, according Andrus, violated the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 21 ¶¶ 4, 36).  Andrus explained to Farkas that she had failed to "change[] the callback dates on the letter[s]" as required by the FDCPA.  (Id. ¶ 36).  Farkas alleged in her complaint that she expressed concern to Andrus that his comments were in retaliation for her FMLA request and leave, (Doc. 1 ¶ 33), but Farkas did not testify to this fact during her deposition.  (Doc. 20, Ex. A, Farkas Dep. 80:14-81:10). Farkas was not disciplined as a result of the interactions with Andrus and Miles. (See Doc. 21 ¶¶ 26, 28, 31, 35, 37).

Farkas met with both Sarver and Andrus on May 7, 2014.  (See Doc. 1 ¶ 34; Doc. 10 ¶ 34).  During the meeting, Farkas received three disciplinary reports.  (Doc.

21 ¶¶ 38, 42, 46).  The first report pertained to an incident on March 17, 2014, when Farkas misled a customer to believe that setting up a payment arrangement would place his account in "good standing" such that the account would not be reported to the credit bureaus.  (Id. ¶ 38).  The second issued for failing to follow guidelines concerning management of a deceased consumer's account during a call on April 26, 2014.  (See id. ¶ 42).  Despite audio evidence confirming NRA's characterization of both conversations, (see id. ¶¶ 40, 44), Farkas disagreed with issuance of the disciplinary reports and refused to sign them.  (Doc. 1 ¶ 34; see Doc. 21 ¶¶ 41, 45). Farkas submitted a rebuttal to the second report, expressing her belief that the discipline was "a form of punishment due to me taking FMLA."  (Doc. 1 ¶ 34(b); Doc. 10 ¶ 34(b)).  Sarver retracted the third disciplinary report, involving a May 1, 2014 phone call, when Farkas disputed its accuracy.  (See Doc. 21 ¶ 46).  Farkas testified that, during this meeting, Sarver told her: "I could have fired you way before you took your FMLA."  (Doc. 20, Ex. A, Farkas Dep. 93:5-6).

Sarver concluded that Farkas's actions violated both NRA policy and the FDCPA.  (See Doc. 21 ¶ 47).  As a consequence, Sarver removed Farkas's supervisor line responsibilities and informed Farkas that she had the option to either change to a different shift or relocate from NRA's Crossgate office to the Paxton Street office. (Id.)  Farkas testified that she recalled taking FMLA leave in the days preceding her May 7, 2014 meeting with Sarver and Andrus.  (See Doc. 20, Ex. A, Farkas Dep. 92:3-8).

Farkas began working at NRA's Paxton Street location on approximately May 8, 2014.  (See Doc. 20, Ex. A, Farkas Dep. 42:9-12).  Thereafter, Farkas twice

expressed an interest in resuming her supervisor line responsibilities to her new manager.  (See id. 60:11-62:14).  Farkas has not asked to be reassigned to that role since May 2014.  (Doc. 21 ¶ 10; Doc. 20, Ex. A, Farkas Dep. 62:13-14).  During her deposition, Farkas identified the last incident of perceived retaliation as "the write-up situation" on May 7, 2014.  (Doc. 20, Ex. A, Farkas Dep. 50:11-14).

Farkas stated that she did not receive bonuses following her transfer in May 2014, (id. 44:15-18), but later clarified that she did receive "one small bonus" while at the Paxton Street location.  (Id. 140:15-17).  Farkas also testified that she began to experience anxiety in late 2014 because of "things that were going on at the job." (Doc. 24-1, Farkas Dep. 112:12-15).  She explained that, in her view, "the overview of being demoted, transferred, having the supervisor line taken from [her, and] feeling embarrassed" contributed to her anxiety and panic attacks.  (Id. 112:4-19; see Doc. 20, Ex. A, Farkas Dep. 115:1-7).  She further noted that circumstances unrelated to work, including the death of her sister in January 2015, contribute to her anxiety condition.  (Doc. 20, Ex. A, Farkas Dep. 110:11-21).  Farkas remains employed as a debt collector at NRA's Paxton Street office.  (See Doc. 21 ¶¶ 1, 60).

Farkas commenced this action with the filing of a four-count complaint (Doc. 1) on February 19, 2015.  Therein, Farkas asserts the following claims: interference with FMLA rights in violation of 29 U.S.C. § 2615(a)(1) (Count I); discrimination with discriminatory animus in violation of 29 U.S.C. § 2615(a)(2) (Count II);

discrimination without discriminatory animus in violation of 29 U.S.C. § 2615(a)(2)

(Count III); and retaliation in violation of 29 U.S.C. § 2615(b) (Count IV).[3]

Defendants timely answered the complaint, denying liability. (Doc. 10).

Defendants also moved to dismiss Figueroa as a defendant pursuant to Federal

Rule of Civil Procedure 12(b)(6). (Doc. 11). Farkas concurred in that motion, and

the court dismissed Farkas's claims against Figueroa with prejudice. (Doc. 12). A

period of discovery followed, during which defendants deposed Farkas and served

written discovery. (See Doc. 20, Ex. A, Farkas Dep.). Farkas's counsel did not serve

discovery requests or depose any witnesses. (Doc. 20, Ex. B, at 2 n.1). Defendants

filed the instant motion (Doc. 19) on January 15, 2016.[4] The motion is fully briefed

(Docs. 22, 24, 25), and ripe for disposition.

---

[3] In the opening paragraph of her complaint, Farkas makes vague reference to "a hostile work environment" and "constructive discharge[] . . . on the basis of her disability" in violation of the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1 ¶ 1). Farkas's complaint is otherwise silent concerning the PHRA or any claims potentially arising thereunder. (See generally Doc. 1). Her Rule 56 papers defend claims under the FMLA alone. (See Doc. 24). During her deposition, Farkas indicated that she did not intend to include hostile work environment and constructive discharge claims in her complaint. (See Doc. 20, Ex. A, Farkas Dep. 55:7-56:23). Hence, the court will not construe Farkas's arguments to include PHRA claims for hostile work environment or constructive discharge.

[4] Farkas did not serve the complaint on defendant Miles, and moving defense counsel does not represent Miles. (See Doc. 22 at 2 n.3). On July 12, 2016, the court issued an order (Doc. 20) directing Farkas to show cause why this action should not be dismissed against Miles for failure to serve the summons and complaint within the time required by Federal Rule of Civil Procedure 4(m). See FED. R. CIV. P. 4(m). Farkas did not respond to the show cause order. Hence, the court will dismiss the complaint against Miles pursuant to Rule 4(m).

## II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

The dual objectives of the FMLA are "to 'balance the demands of the workplace with the needs of families'" and "to 'entitle employees to take reasonable leave for medical reasons.'"  Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (quoting 29 U.S.C. § 2601(b)(1)-(2)).  To accomplish these goals, the FMLA accords eligible employees up to twelve weeks of leave during any twelve-month period for certain qualifying medical events.  See 29 U.S.C. § 2612(a)(1).  Courts recognize two distinct types of FMLA claims: (1) claims of interference with the existence of or the attempt to exercise substantive FMLA rights; and (2) claims of retaliation for exercise of those rights or for opposing employer practices that violate the FMLA. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 (3d Cir. 2012);

see also Grosso v. UPMC, 857 F. Supp. 2d 517, 540 (W.D. Pa. 2012).  Farkas asserts

both interference and retaliation claims in her complaint.  (See Doc. 1).

### A.    Individual Liability

Our threshold issue is the viability of Farkas's claim of individual liability

against Andrus.  An individual may be held liable under the FMLA only if "he or

she exercises supervisory authority over the complaining employee and was

responsible in whole or part for the alleged violation while acting in the employer's

interest."  Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 417 (3d

Cir. 2012) (citation omitted).  Factors that determine the existence of supervisory

authority include whether the individual has the power to hire or terminate the

employee, whether the individual controlled the employee's work schedules or

conditions of employment, and whether the individual determined rates and

methods of payment or maintained employee records.  Id. at 418.  No one factor is

dispositive.  Id.

Farkas does not defend her claims against Andrus in her brief opposing

defendants' motion.  (See generally Doc. 24).  Moreover, Farkas concedes that

Andrus did not control her work schedule, discuss pay or performance with her, or

give her assignments.  (See Doc. 20, Ex. A, Farkas Dep. 129:10-130:5; see also Doc.

21 ¶ 58).  The record contains no evidence from which a reasonable trier of fact

could conclude that Andrus exercised "supervisory authority" over Farkas.  See

Haybarger, 667 F.3d at 417.  The court will thus grant defendants' unopposed

request to dismiss Andrus as a defendant.[5]

### B.   Interference

To prevail on her FMLA interference claim, Farkas must establish: (1) she

was an "eligible employee" as defined by the FMLA; (2) NRA was an employer

subject to FMLA requirements; (3) Farkas was entitled to FMLA leave; (4) Farkas

notified NRA of her intention to take FMLA leave; and (5) NRA denied or otherwise

interfered with Farkas's request for leave.  See Ross v. Gilhuly, 755 F.3d 185, 191-92

(3d Cir. 2014) (quoting Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F. Supp. 2d

405, 446 (W.D. Pa. 2008)) (citing Sommer v. The Vanguard Group, 461 F.3d 397, 399

(3d Cir. 2006)).  Interference activity includes not only an employer's refusal to

authorize leave but also "discouraging an employee from using such leave."  29

C.F.R. § 825.220(b).  Examples of interference thus include refusing to authorize

leave, discouraging use of leave, firing an employee based on a request for leave,

and failing to advise an employee of his or her FMLA rights.  See id.; Erdman v.

Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009); Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 142-43 (3d Cir. 2000).

Defendants concede the first four elements of Farkas's interference claim

and focus exclusively on the final element: whether defendants denied or interfered

---

[5] District courts routinely deem claims to be waived or abandoned when
litigants fail to respond to a moving party's Rule 56 arguments.  See Brice v. City of
York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (citing D'Angio v. Borough of
Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of
Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (same).

with Farkas's FMLA rights.[6]  (Doc. 22 at 9-17).  Farkas admits that defendants

granted her leave request on the day she submitted it and that she was never

denied the ability to use leave as needed.  (Doc. 20, Ex. A, Farkas Dep. 71:21-24).

Hence, it is undisputed on this record that defendants did not deny Farkas's right to

use FMLA leave.

Farkas contends, however, that defendants "otherwise interfered" with her

FMLA rights.  The FMLA authorizes an interference claim when an employer takes

action which might "chill" an employee's desire to use FMLA leave, "even when the

employee takes the leave."  Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 501-02

(M.D. Pa. 2015) (quoting Grosso v. Fed. Express Corp., 467 F. Supp. 2d 449, 463

(E.D. Pa. 2006)); Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311, 326-31

(W.D. Pa. 2004); Williams v. Shenango, Inc., 986 F. Supp. 309, 321 (W.D. Pa. 1997).

Courts require a plaintiff claiming discouragement to demonstrate an affirmative

step by the employer to discourage use of FMLA leave.  See Alred v. Eli Lilly & Co.,

771 F. Supp. 2d 356, 369 (D. Del. 2011) (citing Hilborn v. Cordaro, No. 3:CV-06-223,

2007 WL 2903453, at *7 (M.D. Pa. Sept. 28, 2007)).  Examples include pressuring the

employee to use leave at another time, proposing the employee work remotely

---

[6] Farkas's counsel disputes defendants' formulation of an interference claim, arguing that the Third Circuit Model Jury Instructions define such a claim in four elements rather than five.  (Doc. 24 at 2-3).  He also chides defendants for relying on case law rather than model instructions.  (Id. at 2).  Farkas's counsel misapprehends the significance of the authority he cites.  Although model instructions are invaluable to courts in describing oft-complex legal theories to jurors, they are not binding legal authority.  See Ellis v. Budget Maint., Inc., 25 F. Supp. 3d 749, 756-57 (E.D. Pa. 2014) (quoting United States v. Maury, 695 F.3d 227, 259 (3d Cir. 2012)).  To the extent model instructions diverge from Third Circuit precedent, the court is compelled to apply binding decisional law of the Third Circuit.

rather than taking leave, and criticizing the employee for taking leave.  See id. (citing Grosso, 467 F. Supp. 2d at 464; Butler v. IntraCare Hosp. N., No. H-05-2854, 2006 WL 2868942, at *4 (N.D. Tex. Oct. 4, 2006); Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp. 2d 255, 268 (D.N.J. 2001); Williams, 986 F. Supp. at 320-21).

The court is mindful of its obligation to construe all record evidence in the light most favorable to Farkas.  Under this standard, the court finds that the record, though sparse and undeveloped by Farkas, contains sufficient evidence from which a trier of fact could reasonably conclude that defendants discouraged Farkas from using FMLA leave.  Farkas testified that Hankerson spoke to her in a "lifted" voice, "louder than [his] regular talking tone," and "started shaking his head" when she initially approached him to submit a request for intermittent FMLA leave.  (Doc. 20, Ex. A, Farkas Dep. 67:7-68:17).  Farkas further testified that Hankerson encouraged her to abandon her FMLA request and simply use sick time when she needed to call out of work.  (See id. 53:13-15, 71:19-20, 142:15-19).  According to Farkas, Hankerson suggested she cut her hours to part time, since she "cannot control" her condition.  (Id. 68:24-69:2).  And on one occasion, Miles "raised her voice loudly" and criticized Farkas for taking leave.  (See id. 74:19-76:4).  From this evidence, a reasonable juror could fairly conclude that defendants discouraged Farkas from applying for and using FMLA leave.

Nonetheless, no matter the basis for her interference claim, Farkas must establish that she suffered prejudice or injury from defendants' interference.  See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).  Indeed, the FMLA will "provide[] no relief unless the employee has been prejudiced by the violation."

Id. Courts in this judicial circuit routinely hold that discouragement alone, absent demonstrated prejudice, does not establish an FMLA interference claim. See, e.g., Griffith v. PNC Bank, No. 13-5407, 2015 WL 2400222, at *13-14 (D.N.J. May 20, 2015); Wright v. Shore Mem'l Hosp., No. 11-5583, 2013 WL 6080072, at *8-9 (D.N.J. Nov. 19, 2013); Calero v. Cardone Indus., Inc., No. 11-3192, 2012 WL 2547356, at *16 (E.D. Pa. June 29, 2012) (citing Conoshenti, 364 F.3d at 143).

Farkas identifies no particular prejudice deriving from comments purportedly made by Hankerson and Miles. When asked by defense counsel, Farkas stated that she was never denied the ability to take intermittent leave once her request was approved by Hankerson and that she suffered no harm as a result of Miles' criticism. (Doc. 20, Ex. A, Farkas Dep. 71:21-24, 76:5-8). Farkas does not so much as allege that she was ever actually discouraged from taking FMLA leave when needed. (See generally Docs. 1, 24). Although Farkas opines broadly that she believes Hankerson's comments to be the cause of "[s]ome of [her] anxiety," Farkas offers no evidence beyond her own speculation to substantiate this theory. (See Doc. 20, Ex. A, Farkas Dep. 115:1-3, 115:8-13). Such conjecture and suspicion do not suffice to establish genuine disputes of material fact. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)); Pobodnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325).

Farkas has not adduced any evidence from which a reasonable juror could conclude that she was prejudiced by defendants' purported interference with her FMLA rights. See Griffith, 2015 WL 2400222, at *13-14; Wright, 2013 WL 6080072,

at *9; <u>Calero</u>, 2012 WL 2547356, at *16.  Hence, the court will grant defendants'

motion for summary judgment as to Farkas's FMLA interference claim.[7]

C.    Retaliation

Farkas asserts three ostensible FMLA retaliation claims in her complaint.

First, Farkas contends that direct evidence supports her claim of retaliation for

exercise of FMLA rights.  (<u>See</u> Doc. 24 at 6-7).  Second, to the extent the court finds

no direct evidence of such retaliation, Farkas asserts that defendants proffered

reasons for disciplining her are pretextual and an attempt to disguise retaliatory

intent.  (<u>See id.</u> at 7-8).  And third, Farkas submits that defendants further retaliated

against her for opposing defendants' allegedly unlawful FMLA practices.  (<u>See id.</u> at

8-10).  The court considers Farkas's claims *seriatim*.

1.    *Exercising FLMA Rights*

The statutory language of the FMLA does not itself contemplate a retaliation

claim for the exercise of FMLA rights.  Section 2615(a)(2) speaks only to retaliation

"for opposing any practice made unlawful by the Act"; similarly, the proscriptions

of Section 2615(b) are limited to retaliatory action for participating in an inquiry or

proceeding concerning the FMLA.  <u>See</u> <u>Conoshenti</u>, 364 F.3d at 141-42, 146 & n.9

---

[7] Farkas also alleges in her complaint that defendants interfered with her
FMLA rights by failing to provide her with a written notice of expectations and
obligations and failing to inform her of any consequences for failing to abide same.
(<u>See</u> Doc. 1 ¶ 54(c)).  Farkas did not offer any deposition testimony concerning the
alleged failure to provide statutory notices, nor does she defend this interference
theory in her brief opposing defendants' comprehensive Rule 56 motion.  (<u>See</u> Doc.
24).  Given the lack of evidence in support of this claim and Farkas's failure to
oppose defendants' motion in this regard, the court deems any interference claim
grounded in failure to provide FMLA notices to be abandoned.  <u>See</u> <u>Brice</u>, 528 F.
Supp. 2d at 516 n.19 (citing <u>D'Angio</u>, 34 F. Supp. 2d at 265); <u>Brown</u>, 514 F. Supp. 2d
at 678 n.7 (same).

(citing 29 U.S.C. § 2615(a)-(b)).  However, the Third Circuit Court of Appeals has interpreted the Act's implementing regulations, in particular 29 C.F.R. § 825.220(c), as proscribing retaliation for the exercise or attempted exercise of FMLA rights. See Conoshenti, 364 F.3d at 146 n.9; see also Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014); Lichtenstein, 691 F.3d at 301.  The regulation provides that the FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).

To establish an FMLA retaliation-for-exercise claim, Farkas must prove that: (1) she invoked the right to FMLA-qualifying leave; (2) she suffered adverse employment action; and (3) the adverse employment action was "causally related to" her exercise of FMLA rights.  Lichtenstein, 691 F.3d at 301-02.  Defendants do not dispute that Farkas invoked her right to FMLA-qualifying leave, satisfying the first element of her claim.  (Doc. 22 at 9, 23).  Defendants also assume *arguendo* that Farkas's demotion, transfer, and accompanying pay reduction constitute adverse

employment action.[8]  (See id. at 23).  Defendants exclusively focus their Rule 56

discussion on the issue of causation.

Courts within the Third Circuit have traditionally embraced two types

of retaliation-for-exercise claims: those based on direct evidence, subject to the

mixed-motive framework set forth by the Supreme Court of the United States in

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), and those grounded in

circumstantial evidence, subject to the burden-shifting paradigm of McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Lichtenstein, 691 F.3d at 301-02.

Farkas asserts both a mixed-motive claim and a circumstantial evidence claim in

her complaint.  The court will address each claim in turn.

### a.  Mixed-Motive Claim

The Supreme Court recently limited the availability of a mixed-motive

framework in a number of employment discrimination contexts.  In Gross v. FBL

Financial Services, Inc., 557 U.S. 167 (2009), the Court rejected application of the

Price Waterhouse mixed-motive analysis to claims under the Age Discrimination in

---

[8] In her complaint, Farkas asserts that she suffered an assortment of adversities beyond or deriving from her transfer and demotion.  Farkas specifically contends defendants denied her a bereavement day to attend her grandmother's wake on June 4, 2014, and that defendants ceased awarding bonuses to her after her transfer to the Paxton Street location.  Farkas's allegata in this regard are inconsistent with the probata.  Farkas testified that she received at least one bonus, albeit a "small" one, since her transfer.  (See Doc. 20, Ex. A, Farkas Dep. 140:15-20).  Farkas also testified that defendants ultimately granted her a paid bereavement day and a paid vacation day.  (See id. 96:3-99:16).  When asked to explain the latter discrepancy, Farkas could not recall exact dates but speculated that she "didn't receive [her] bereavement day on the original day [she] wanted it."  (Id. 98:16-99:3).  Neither of these instances rise to the level of an adverse employment action, which is defined as "an action that 'alter the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  Budhun, 765 F.3d at 257.

Employment Act ("ADEA"), holding that material distinctions between Title VII and the ADEA preclude applicability of the lessened <u>Price Waterhouse</u> standard to claims arising under the latter statute.  <u>Id.</u> at 175-78.  Four years later, in <u>University of Texas Southwestern Medical Center v. Nassar</u>, 570 U.S. __, 133 S. Ct. 2517 (2013), the Court also rejected the mixed-motive framework in the context of Title VII retaliation claims, holding, as in <u>Gross</u>, that such claims are subject to the heightened "but-for" causation standard.  <u>See</u> <u>Nassar</u>, 133 S. Ct. at 2534.

The impact of <u>Gross</u> and <u>Nassar</u> on the continued viability of an FMLA mixed-motive framework is not clear.  In <u>Lichtenstein v. University of Pittsburgh Medical Center</u>, 691 F.3d 294 (3d Cir. 2012), a Third Circuit panel acknowledged that <u>Gross</u> raises questions concerning the availability of a mixed-motive analysis for FMLA claims.  <u>Id.</u> at 302.  The court further observed that at least one appellate court, the Sixth Circuit Court of Appeals, had ruled that <u>Gross</u> does not preclude FMLA mixed-motive claims.  <u>Id.</u> (citing <u>Hunter v. Valley View Local Sch.</u>, 579 F.3d 688, 692 (6th Cir. 2009)).  The <u>Lichtenstein</u> court concluded that the plaintiff readily survived Rule 56 scrutiny "under the more taxing <u>McDonnell Douglas</u> standard" and thus declined to decide the impact of <u>Gross</u> on FMLA mixed-motive claims.  <u>Id.</u> As recently as 2015, the Third Circuit noted that it will "continue to save [its] full analysis of this question for another day."  <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 598 F. App'x 109, 112 n.4 (3d Cir. 2015) (nonprecedential).

Like the <u>Lichtenstein</u> panel, this court need not determine the continued viability of FMLA mixed-motive claims in <u>Gross</u>'s wake.  It is well-settled that the quality of evidence proffered by the plaintiff determines which framework governs

a particular claim: when a plaintiff presents direct evidence, the claim is properly analyzed under the mixed-motives theory of <u>Price Waterhouse</u>, and when a claim rests on circumstantial evidence, it is governed by the <u>McDonnell Douglas</u> burden-shifting paradigm.  <u>Lichtenstein</u>, 691 F.3d at 302; <u>see</u> <u>Innella v. Lenape Found.</u>, No. 14-2862, 2015 WL 9450861, at *9, __ F. Supp. 3d __ (E.D. Pa. Dec. 23, 2015); <u>Hayduk v. City of Johnstown</u>, 580 F. Supp. 2d 429, 458-59 (W.D. Pa. 2008).  Evidence qualifies as "direct" when it tends to prove that "decisionmakers placed substantial negative reliance on [the protected activity] in reaching their decision."  <u>Conoshenti</u>, 364 F.3d at 147 n.10 (alteration in original).  Farkas offers no such evidence *sub judice*.

In suggesting that the record presents direct evidence of discrimination, Farkas asserts that "Sarver connected [Farkas's] FMLA request with a threat of termination with a threatening [sic]." (Doc. 24 at 7).  Farkas also reemphasizes that Hankerson attempted to dissuade her from applying for FMLA leave in February 2014.  (<u>See</u> <u>id.</u>)  Farkas then offers the blanket contention that "a reasonable person" could conclude based on these two instances that Sarver behaved with discriminatory animus in demoting and transferring Farkas.  (<u>Id.</u>)

Farkas's first argument misapprehends the record evidence.  Farkas did not testify that Sarver expressly related Farkas's demotion and transfer to her FMLA leave or threatened to terminate Farkas for taking such leave.  Farkas testified only that Sarver stated that NRA "could have fired [Farkas] *way before* [Farkas] took FMLA leave." (Doc. 20, Ex. A, Farkas Dep. 93:5-6 (emphasis added)).  Viewed in the light most favorable to Farkas, this testimony establishes only that Sarver believed NRA had a legitimate basis to terminate Farkas's employment prior to her request

for FMLA leave and that Sarver relayed her belief to Farkas.  With regard to Hankerson's recommendation that Farkas preserve her FMLA leave to care for her daughter, Farkas presents no evidence tending to show that Hankerson's comment played any role, much less a substantial one, in Sarver's decision months later to demote and transfer Farkas.  (See Doc. 24).

No reasonable juror could conclude from the cited evidence that decisionmakers placed "substantial negative reliance" on Farkas's FMLA leave in deciding to demote her and transfer her to the Paxton Street location in May 2014.  To the extent the Price Waterhouse mixed-motive framework endures as a viable FMLA theory, no evidence supports its application in this case.  The court will thus grant summary judgment to defendants on Count II of Farkas's complaint.

### b.    Pretext Claim

An FMLA retaliation claim based on circumstantial evidence is governed by the burden-shifting paradigm of McDonnell Douglas.  See Budhun, 765 F.3d at 256; Lichtenstein, 691 F.3d at 302.  Under McDonnell Douglas, it is Farkas's burden to establish a *prima facie* case of retaliation by demonstrating that (1) she invoked an FMLA right, (2) she suffered adverse employment action, and (3) the adverse action was causally connected to invocation of FMLA rights.  Lichtenstein, 691 F.3d at 302.  Once Farkas establishes a *prima facie* case of retaliation, the burden shifts to defendants to produce evidence of a "legitimate, nondiscriminatory reason" for Farkas's transfer and demotion.  Id.  If defendants meet this "minimal burden" of production, Farkas must point to record evidence suggesting that defendants'

reasons for her transfer and demotion are pretextual.  <u>Budhun</u>, 765 F.3d at 256

(citing <u>Lichtenstein</u>, 691 F.3d at 302).

Defendants assume *arguendo* that Farkas can satisfy the first and second

elements of a *prima facie* case but contend that Farkas cannot demonstrate a causal

relation between her FMLA leave and defendants' decision to demote and transfer

her.  An FMLA plaintiff may establish such a causal link with evidence establishing

"an unusually suggestive temporal proximity between the protected activity and the

allegedly retaliatory action" or "a pattern of antagonism coupled with timing."  <u>Id.</u>

at 258 (quoting <u>Lauren W. *ex rel.* Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir.

2007)).  Farkas does not endeavor to establish either of these factors in her

opposition papers.  (<u>See</u> Doc. 24 at 7-8).  Nonetheless, the court examines the record

evidence in the light most favorable to Farkas to determine whether an inference of

causation is warranted.

Temporal proximity is measured from the date on which the employee first

engaged in protected activity.  <u>Capps v. Mondelez Global LLC</u>, 147 F. Supp. 3d 327,

337 (E.D. Pa. 2015) (citing <u>Blakney v. City of Phila.</u>, 559 F. App'x 183, 186 (3d Cir.

2014)).  The Third Circuit Court of Appeals has suggested that a two-month gap,

without more, is not "unusually suggestive" for purposes of this analysis.  <u>See</u>

<u>Williams v. Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004); <u>see</u>, <u>e.g.</u>,

<u>Latta v. U.S. Steel-Edgar Thompson Plant</u>, No. 2:11-CV-1622, 2013 WL 6252844, at

*5 (W.D. Pa. Dec. 4, 2013); <u>Knepp v. Overhead Door Corp.</u>, No. 1:03-CV-1993, 2005

WL 2030469, at *7 (M.D. Pa. Aug. 16, 2005); <u>Mutz v. Agere, Inc.</u>, No. 04-5082, 2005

WL 1715657, at *4 (E.D. Pa. July 21, 2005).  In the absence of suggestive proximity,

courts must consider whether timing combines with other evidence to support an inference of causation. See Capps, 147 F. Supp. 3d at 337 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

The court concludes that the two-month gap between Farkas's request for FMLA leave on March 3, 2014 and her demotion and transfer on May 7, 2014 is not unduly suggestive. Cf. Latta, 2013 WL 6252844, at *5; Knepp, 2005 WL 2030469, at *7; Mutz, 2005 WL 1715657, at *4. Hence, Farkas must submit "other evidence" of retaliation to sustain her FMLA claim. See Budhun, 765 F.3d at 258. Farkas fails to carry this burden.

In support of her claim, Farkas again offers the blanket statement that Sarver's and Hankerson's individual comments would permit "a reasonable person in the same or similar position as Farkas" to infer retaliatory intent. (Doc. 24 at 8). As the court noted *supra*, Farkas mischaracterizes the record evidence concerning each of these statements. Neither Sarver nor Hankerson related NRA's decision to demote and transfer Farkas to her request for or use of FMLA leave. With respect to Hankerson's statement, Farkas does not so much as allege that Hankerson had authority to render or to participate in such employment decisions. (See generally Doc. 24). Hence, the evidence Farkas cites does not tend to establish a causal connection between her request for FMLA leave and her demotion and transfer.

Nor does Farkas's argument find support elsewhere in the record. Farkas alleged in her complaint that, prior to requesting FMLA leave, she had never been disciplined by NRA. (Doc. 1 ¶ 40). Farkas admits that this statement was untrue and that she was disciplined three times in the year preceding her FMLA request.

(Doc. 20, Ex. A, Farkas Dep. 99:17-100:21; Doc. 21 ¶ 54).  At least one instance of prior discipline involved violation of the FDCPA, the same type of misconduct undergirding the discipline issued by Sarver in May 2014.  (Doc. 21 ¶ 54).  With respect to Farkas's March 28, 2014 encounter with Miles, Farkas concedes that her payments were in fact low when Miles approached and reprimanded her for same. (Doc. 20, Ex. A, Farkas Dep. 76:18-21).  The record contains a dearth of evidence tending to support Farkas's insinuation that defendants treated her unjustly as a result of her FMLA request.  The court concludes that the Rule 56 record would not allow a reasonable juror to infer a causal connection between Farkas's FMLA leave and the alleged adverse employment actions.

Assuming that Farkas could establish her *prima facie* case of retaliation, defendants assert that Farkas's claim nonetheless fails at the second and third steps of the McDonnell Douglas analysis.  The court agrees.  Defendants have proffered legitimate, nondiscriminatory reasons for removing Farkas's supervisor designation and transferring her to the Paxton Street location, to wit: three disciplinary reports issued to Farkas on May 7, 2014 for violations of both the FDCPA and NRA policies. (Doc. 21 ¶¶ 38, 42, 46).  As a result of these violations, Sarver removed Farkas's responsibility for the supervisor line and provided her the option of transferring to night shift, presumably due to that shift's lessened exposure, or to the Paxton Street location, where Farkas would receive heightened supervision.  (See id. ¶ 47; Doc. 22 at 15).  Defendants have sufficiently articulated a legitimate, nondiscriminatory reason for the subject disciplinary reports and consequent adverse employment actions.

To rebut defendants' proffered rationale and establish pretext, Farkas must present evidence from which a reasonable juror could "disbelieve the employer's articulated legitimate reasons" or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Capps, 147 F. Supp. 3d at 338. In other words, Farkas must identify "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendants' proffered rationales that a reasonable factfinder could find them "unworthy of credence." Ross, 755 F.3d at 194 n.13 (quoting Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995)). The record is devoid of such evidence.

In attempt to discredit defendants' disciplinary rationale, Farkas offers only her unsubstantiated speculation that a coworker at NRA "framed" her for one of three disciplinary incidents undergirding her demotion and transfer. (Doc. 20, Ex. A, Farkas Dep. 90:20-91:20). NRA withdrew that particular disciplinary notice upon Farkas's challenge and further investigation. (See Doc. 21 ¶ 46). Farkas otherwise presents neither evidence nor argument to rebut the remaining reports cited by defendants as justification for Farkas's demotion and transfer. (See Doc. 24). Notwithstanding this lack of guidance from Farkas, the court independently reviewed the Rule 56 record and discerns no record evidence tending to discredit defendants' legitimate, nondiscriminatory rationale. Farkas's retaliation claim necessarily fails for this additional reason. The court will accordingly grant defendants' motion for summary judgment on Count III.

### 2.    *Opposing FMLA Violation*

Farkas lastly asserts a claim for retaliation under 29 U.S.C. § 2615(b), which makes it unlawful for an employer to discriminate against an employee because he or she has filed a charged or instituted proceedings under the FMLA, has provided or intends to provide information connected to an inquiry or proceeding relating to the FMLA, or has testified or intends to testify in an FMLA inquiry or proceeding. 29 U.S.C. § 2615(b).  The Third Circuit Court of Appeals has not yet determined whether § 2615(b) contemplates informal employee complaints.  See Thomas v. St. Mary Med. Ctr., 22 F. Supp. 3d 459, 475 (E.D. Pa. 2014).  At least one district court has held that an informal complaint suffices to trigger protection against retaliation. See Sabbrese, 320 F. Supp. 2d at 320-21.  As a threshold standard, an employee complaint "must not be equivocal" to constitute protected opposition activity. Lehmann v. Aramark Healthcare Support Servs., LLC, 630 F. Supp. 2d 388, 393 (D. Del. June 30, 2009) (citing Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006)).

Farkas contends that she "made a formal written letter complaint to her employer asserting her FMLA rights," protesting to Sarver that she is unable to work the night shift.  (Doc. 24 at 9).  In support of this cursory assertion, Farkas cites to her deposition testimony concerning a scheduling request made months prior to her May 7, 2014 disciplinary meeting.  (See id.)  The cited testimony does not support Farkas's characterization thereof.  Farkas did not testify that she filed a formal complaint with NRA defending her FMLA rights or otherwise asserting FMLA violations.  (See Doc. 20, Ex. A, 92:9-17).  Farkas merely stated that she "wrote a letter to the company . . . months prior" to her May 7, 2014 disciplinary

25

meeting, informing Sarver that she "could not do second shift every night." (<u>Id.</u>)
The cited evidence does not support Farkas's suggestion that this letter constituted
FMLA opposition activity within the scope of § 2615(b).

      Farkas also testified that "in 2014, . . . [she] went through a period of time
where [she] wrote a letter to the COO of the company, Shell Sharma, and [she] felt
like nobody was responding to anything [she] was asking within the letter or just
general questions [she] had." (<u>Id.</u> 114:2-7).  Farkas does not identify this letter as
perceived protected activity in her Rule 56 briefing.  (<u>See</u> Doc. 24 at 9).  Nor does
she elaborate on the contents of this letter, precluding the court from assessing on
Farkas's behalf whether she delivered an unequivocal FMLA complaint to her
employer.  (<u>See id.</u>)  In sum, Farkas offers no evidence from which a reasonable
juror might conclude that defendants retaliated against her for engaging in
opposition activity contemplated by the FMLA.  Hence, Count IV of Farkas's
complaint fails to survive Rule 56 scrutiny.

## IV. <u>Conclusion</u>

      The court will grant defendants' motion (Doc. 19) for summary judgment.  An
appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     July 26, 2016